Turley, J.
delivered the opinion of the court.
Complainant purchased of John Morbury sixty acres of land for five hundred dollars, for which he executed three hotes, two for two hundred dollars each, and one for one hundred dollars, and received from Morbury his bond with a penalty of one thousand dollars for the execution of a deed of conveyance with general warranty for said land, when the last payment should be made. Complainant, by virtue of this contract, entered into possession of the premises in January 1821, and for ought that appears has been in the peaceable possession ever since. After the contract, Morbury assigned complainant’s notes to Thomas Hopkms, who received them with a knowledge of the consideration for which they had been executed, and who promised to comply with the condition of the bond; this he did not do, during his life, nor has 1ns administrator or heirs done so, since his death, but his administrator has filed a cross bill, in which he alledges that Hopkins had a good title to the land, but that the evidences had been lost by casualty, and that the complainant for his better protection had entered the land in his own name' and obtained a grant therefor from the state, and prays foir such relief, as under the circumstances the law allows him. To this cross bill there is a demurrer, which is sustained by the chancellor, and to reverse whose opinion an appeal is prosecuted to this court.
It is not denied by the counsel for the complainant, that when a purchaser extinguishes an incumbrance on his vendor’s title, all he can equitably ask is an abatement of the purchase money equal to what it cost to remove the incum-brance, but it is contended, that in the present case, the vendor had no title, that therefore it was a fraud in him to *184 pretend to sell, and that the principle of law as recognized does not apply.
1. We are unable to recognize the correctness of this defence — because, the defendant Hopkins in his answer, alledges,- and the statement is reiterated by his administrator in his cross bill, that he has the legal title to the premises, but has by casualty been prevented from producing the evidences thereof. If this allegation be true, and upon demurrer, we must presume it to be so, and there be any thing in the proposition urged upon the court in Rehalf of the complainant, the ground upon which the distinction is made to rest, is removed — the vendor had title, and there was no fraud in selling to complainant.
2. But we do not recognise the truth of the proposition* con *185 tended for by the complainant. We do not think that a vendor’s right to ask that a title purchased in by his vendee, shall enure to his benefit, upon his paying the purchase money, depends upon the question, whether he bad title or not to the premises at the time of the sale? but results from the relation which it has been found expedient to establish between vendor and vendee, to preserve the confidence, which in matters of contract, ought to exist between man and man, and prevent the obtaining of undue advantage from information acquired by means of such contract.
This relation is somewhat similar to that which exists between a landlord and his tenant. Having recognised the title in the one instance, by the acceptance of a lease, and in the other, by a pruchase, you shall do nothing to the prejudice thereof, so long as the relation continues.
That this right of a vendor does not depend upon the fact of his having a title at the time of the sale, is clearly demonstrable. If he had the title there is none other for the ven-dee to purchase, for if he purchase a conflicting title, which is inferior to that of his vendor, he does it at his oWñ expense, and can never ask him for remuneration. If he had no title, then the complainant says he is deprived of the right. According to this mode of reasoning, there never can exist a case, in which the principle of law as admitted can apply; and it is a dead letter, ulness it be confined strictly to the case of an incumbrance connected With the title as a mortgage or a trust, which cannot be contended for with success.
In the present case, the complainant has but little ca'uáe' *186 of complaint. He obtained possession of the land contracted for, under his contract in January, 1821; he has remained in tho undisturbed possession thereof ever since, and to make assurance doubly sure, has entered and obtained a grant for it in his own name. There would be neither law nor justice in permitting him to hold the premises under this title, in exclusion of the rights of Hopkins, and he must be satisfied with remuneration for the trouble and expense he may have been at in procuring the title from the state, under which he seeks to protect himself from the performance of his contract.
The decree will therefore be reversed, and the cause remanded for further proceedings.
The decree entered in this cause, after reciting the facts proceeds — “The court is of opinion, and so declares, that if Hopkins’ title to the lands in the pleadings mentioned be defective, as charged in the bill, yet all that Meadows can claim in equity of Hopkins’ representatives, is that they shall feimbursehim his expenses in perfecting his title if he retains the land.. Whereupon the court doth adjudge, order and decree that the decree of the chancellor in this case be reversed; and this court, proceeding to pronounce such decree as the court below should have rendered, doth further order, ad judge and decree that the demurrer to the cross bill be over ruled, and that Meadows be required to answer the same, and that this cause be remanded back to the chancery court for further proceedings to be had therein, according to the principle of this decree. The court further decrees, that said James P. Thompson, administrator of Thomas Hopkins recover of said Thomas Meadows the costs that have accrued in this cause since the rendition of the decree in the chancery court. The other costs to be settled in the court below.

 The proposition alluded to was advanced by the same counsel, who argued the case of Meadows vs. Hopkins, in the case of Hopkins' administrator vs. Yowell, which depending upon the same principle as the former, these two were brought on and argued together. That case was as follows:—
On the 4th of February, 1826, Hopkins sold Yowell twenty acres of land for $100, secured by note, and gave bis bond to make him a general warranty deed for the land.
On the 23d of January, 1832, Yowell paid the purchase money and took tfp his note, but Hopkins failed and refused to make the title; and in fact had no title but an entry never ripened into a grant. After paying the purchase money, Yowell sued' Hopkins on the title bond, and recovered judgment for about $220, damages. Hopkins filed his bill to enjoin this judgment upon the ground that as Yowell got the possession of the land by virtue of the purchase from him,which possession, having been continued more than seven years, is now protected by the statate of limitations, he ought not to be allowed to collect the damages adjudged to him for the breach of the title bond.
Upon this statement the counsel argued. — But Hopkins does not show that this land was ever granted, nor does il appear that Yowell’s possession was held by actual enclosure, and therefore non constat that tlie possession will be protected by the statute of 1819. As Hopkins has been paid for the land, and does not show that he has title, or that he is capable of making an available generál warranty deed, it.is not perceived how he can shield himself from the consequences of a breach of his title bond. He covenants to make a title, which he acknowledges he cannot make, does not offer to return the purchase money which he acknowledges he received, and yet asks to be relieved from the payment of damages for the breach of his covenant.
It is also to be observed, that Hopkins exhibits no entry, plat and certificate of survey, or other evidence of title; and in the absence of all and every of these, his assuming to sell the land is a fraud, — and if countenanced opens the door to the most monstrous practices by the unprincipled speculator, enabling him to sell to ignorant men the unappropriated land of the state, and when they discover the trick, and avail themselves of their occupancy, refuse to pay back the purchase money on the pretence that they became occupants by virttfe *185 of thepnrchase, which was of itself a fraud. In short, it is earnestly insisted, that unless Hopkins had actually shown the court an entry, a plat and éertifb cale of survey, or some other evidence that he had* in point of equity, extinguished the title of the state, that title is not to be regarded as an incumbrance on his title. The ruléis not denied that where a purchaser extinguishes an in-cumbrance on his vendor's title, all he can equitably ask is an abatement of the purchase money equal to what it cost to extinguish the incumbrance. But when a vendor has no title at all, it is submitted, that it is a fraud in him to pretend to sell, and that the real title cannot be regarded as an incumbrance upon no title.
Sustain Mr. Hopkins in this, and a man may become general occupant of all the vacant land in the state.